RANDY S. GROSSMAN
Acting United States Attorney
MATTHEW J. SUTTON
Assistant United States Attorney
Illinois State Bar No. 6307129
NICOLE BREDARIOL
Special Assistant U.S. Attorney
Massachusetts Bar No. 696484
AMY B. WANG
Assistant United States Attorney
California Bar No. 306459
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-8941
Email: Matthew.Sutton@usdoj.gov

Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| UNITED STATES OF AMERICA, | Case No.: 21-cr-01559-H |
|---|---|
| v. | Date: November 15, 2021<br>Time: 9:00 a.m. |
| STEPHEN MYRICK (26), | The Honorable Marilyn L. Huff |
| Defendant. | **UNITED STATES' SENTENCING MEMORANDUM** |

The United States Of America, by and through its counsel, Randy S. Grossman, Acting United States Attorney and Matthew J. Sutton, Nicole Bredariol, and Amy Wang, Assistant United States Attorneys, hereby files its Sentencing Memorandum.

**I.**

**STATEMENT OF THE CASE**

On May 25, 2021, a federal grand jury in the Southern District of California returned an ten-count indictment charging Defendant Stephen MYRICK (D26) and fifty-nine co-defendants with various offenses, including possession of methamphetamine with intent to

distribute, in violation of Title 21, United States Code, Sections 841(a)(1). On June 29, 2021, Defendant pled guilty to the charge. Defendant is currently scheduled for sentencing on November 15, 2021.

## II.

## STATEMENT OF FACTS

OCDETF Operation Crystal Hydra is a long-term investigation led by the Drug Enforcement Administration, Internal Revenue Service, and the Postal Inspection Service targeting a sophisticated methamphetamine distribution and money laundering network led by Reyes ESPINOZA, David VILLEGAS, John BOMENKA, Dennis JONES, and Darren MOSIER. This San Diego based network supplied multi-kilogram quantities of methamphetamine to dozens of subdistributors located throughout San Diego County as well as the United States, including Hawaii, Arizona, Texas, Kansas, Iowa, Michigan, Minnesota, New York, New Jersey, and Massachusetts. And in return, tens of thousands of dollars in narcotics proceeds were returned to the network's leaders via shipments of bulk cash, structured cash deposits into bank accounts, and online money transfer systems like PayPal, Zelle, Venmo, and Cash App.

During the investigation, agents identified Stephen MYRICK as a San Diego based methamphetamine subdistributor who worked closely with Frank CARRILLO (D25). As discussed below, on October 1, 2020, SDSD deputies seized approximately 2.054 kilograms of methamphetamine (actual), which David VILLEGAS had delivered to CARRILLO and MYRICK. MYRICK was not intercepted during the wiretaps

**A.  October 1, 2020: SDSD Seizure of 2.054 Kilograms of Methamphetamine (Actual) from Frank CARRILLO and Stephen MYRICK which was Supplied by David VILLEGAS**

On October 1, 2020, agents intercepted a series of telephone calls between David VILLEGAS using TT2 and Frank CARRILLO using telephone number (760) 454-9115 regarding the delivery of approximately 5.5 pounds of methamphetamine. Agents surveilled CARILLO and Stephen MYRICK leave the Quality Inn located at 607 Leucadia Blvd.,

2

Encinitas, and travel to the Burger King, located at 6401 Balboa Avenue, San Diego, to receive the methamphetamine from VILLEGAS. Agents then coordinated with SDSD deputies to conduct a probation search of CARRILLO when they returned to the Quality Inn. SDSD deputies searched CARRILLO and his hotel room and seized approximately 2.054 kilograms of methamphetamine (actual) in a black bag in CARRILLO's possession.

On October 1, 2020, at approximately 12:01 p.m., Frank CARRILLO using telephone number (760) 454-9115 called David VILLEGAS at TT2. During the call, CARRILLO said he wanted 5 and a half [pounds of methamphetamine]. VILLEGAS asked if CARRILLO would mind "shaky" stuff [methamphetamine], or they [CARRILLO's customers]. CARRILLO said they [customers] did not complain too much. VILLEGAS said he had a couple [two pounds of methamphetamine] that were ready shaky, and CARRILLO said okay. VILLEGAS said he would charge CARRILLO only 18 [$1800] for the shaky ones [pounds of methamphetamine]. CARRILLO said he had 10,000-6 [$10,600]. VILLEGAS said he would give CARRILLO 5 [pounds of methamphetamine] and CARRILLO said okay. VILLEGAS asked if 10,000-6 [$10,600] and CARRILLO said yeah. VILLEGAS said that would be 5 and a half [5 ½ pounds of methamphetamine]. CARRILLO said he (CARRILLO) thought it was 10-6 [$10,600] if 18 [$1800] per each [pounds of methamphetamine]. VILLEGAS said he said 18 [$1800] for the "shaky" ones [pounds of methamphetamine] only. VILLEGAS said he could give CARRILLO no shaky ones [pounds of methamphetamine] if CARRILLO wanted. CARRILLO said he would not mind. VILLEGAS said he mentioned he had some shaky ones [pounds of methamphetamine] VILLEGAS would like to get rid of, if they were not too picky. VILLEGAS said that was why he was offering CARRILLO a discount, but CARRILLO was not obligated to take them [shaky pounds of methamphetamine]. CARRILLO asked VILLEGAS to give him 2 shaky ones [2 pounds of shaky methamphetamine] and asked if they [CARRILLO and VILLEGAS] were talking about 10-2 [$10,200] for the 5 and a half [pounds of methamphetamine]. CARRILLO asked if it was 19 [$1900] per each ones [pounds of methamphetamine] and VILLEGAS said yes, for each one was 19 [$1900]. VILLEGAS said if CARRILLO got shaky ones, he (VILLEGAS)

1 would take 200 [$200] off. CARRILLO asked how much it was for 5 and a half [pounds of
2 methamphetamine]. CARRILLO said he would take the shaky ones [pounds of
3 methamphetamine]. VILLEGAS and CARRILLO talked about crunching numbers.
4 VILLEGAS said 10-6 [$10,600] would be the normal price, but if CARRILLO for 2 shaky
5 ones [2 shaky pounds of methamphetamine] it would be 10-4 [$10,400]. CARRILLO said
6 okay, that would work. CARRILLO asked what time they [CARRILLO and VILLEGAS]
7 could meet. CARRILLO said he would head down there in a minute. VILLEGAS said okay.

8     At approximately 12:09 p.m., CARRILLO using telephone number (760)454-9115
9 texted VILLEGAS at TT2 "[s]ir Frank here. I'll be there on an hour and a half latest."
10 VILLEGAS texted back "Make it two hours".

11     At approximately 1:45 p.m., agents observed CARRILLO exit room #232 at the
12 Quality Inn, located at 607 Leucadia Blvd., Encinitas. Agents then observed CARRILLO
13 meet Stephen MYRICK in the parking lot. Moments later, agents observed MYRICK and
14 CARRILLO depart in a silver Mercedes, bearing California license plate 5WUR929.

15     At approximately 1:50 p.m., CARRILLO using telephone number (760)454-9115
16 called VILLEGAS at TT2. During the call, CARRILLO told VILLEGAS that he was on his
17 way. VILLEGAS told CARRILLO that he would see him in Clairemont in about 30 minutes
18 and CARRILLO said okay.

19     At approximately 2:04 p.m., agents observed MYRICK and CARRILLO arrive at the
20 Jack in the Box, located at 4375 Genesee Avenue, San Diego, in the silver Mercedes. At
21 approximately 2:06 p.m., agents observed MYRICK and CARRILLO exit the Mercedes and
22 walk towards the Jack in the Box.

23     At approximately 2:36 p.m., VILLEGAS using TT2 called CARRILLO at telephone
24 number (760) 454-9115. During the call, VILLEGAS asked where CARRILLO was, and
25 CARRILLO said he was sitting at the patio having lunch with his buddy [MYRICK].
26 VILLEGAS said he was not there. VILLEGAS added he was not going to go over there [Jack
27 in the Box] and sit with all that stuff [methamphetamine] on him waiting for CARRILLO to
28 show up. VILLEGAS asked CARRILLO how he was supposed to know CARRILLO was

there if he did not call VILLEGAS. CARRILLO said he was there [Jack in the Box] and apologized. VILLEGAS said okay.

At approximately 2:43 p.m., agents observed MYRICK and CARRILLO return to the silver Mercedes.

At approximately 2:56 p.m., agents observed VILLEGAS arrive at the Jack in the Box on a silver motorcycle, bearing California paper plates. Moments later, agents observed VILLEGAS depart from the Jack in the Box on the silver motorcycle, followed by MYRICK and CARRILLO in the silver Mercedes. Agents followed VILLEGAS and the silver Mercedes.

At approximately 3:00 p.m., agents observed VILLEGAS arrive at the Burger King parking lot, located at 6401 Balboa Avenue, San Diego, followed by MYRICK and CARRILLO in the silver Mercedes. Moments later, agents observed VILLEGAS retrieve a white plastic bag from his backpack. Agents observed VILLEGAS hand the white plastic bag to CARRILLO through the passenger side window of the silver Mercedes. At approximately 3:03 p.m., agents observed the silver Mercedes depart and drive east on Balboa Avenue. Agents followed the silver Mercedes as it travelled east on Balboa and then north on I-805 and I-5.

At approximately 3:27 p.m., agents observed MYRICK and CARRILLO exit I-5 at Leucadia Blvd. in Encinitas, California in the silver Mercedes. Moments later, agents observed the silver Mercedes turn into the parking lot of the Quality Inn, located at 607 Leucadia Blvd., Encinitas, California. At that time, SDSD deputies conducted a probation search of CARRILLO. During the search, Deputies found CARRILLO in possession of a black bag that contained a white plastic bag that contained six clear plastic bags that further contained a white crystalline substance. Subsequently, Deputies conducted a probation search of room #232 at the Quality Inn. During a search of the room, Deputies found a black baton, a cattle prong and five suspected stolen bicycles. Both CARRILLO and MYRICK were placed in custody and transported to the Encinitas Sheriff's Station where they were booked and released in order to protect the ongoing investigation.

Subsequent DEA laboratory testing confirmed that VILLEGAS supplied CARRILLO and MYRICK with approximately 2.054 kilograms of methamphetamine (actual).

### III.

### MEMORANDUM OF POINTS AND AUTHORITIES

#### A. Guidelines Calculations

In the wake of *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing Guidelines are advisory and are to be considered in conjunction with the factors set forth in 18 U.S.C. § 3553(a) in imposing a sentence.

According to the plea agreement and under USSG § 2D1.1(c)(2), the base offense level is 36 based on the 2.054 kilograms of methamphetamine (actual) that the Defendant possessed. The parties are jointly recommending that the Defendant received a minor role reduction so the adjusted base offense becomes a 33 pursuant to USSG §2D1.1(a)(5)(ii). Defendant is now eligible for safety-valve relief pursuant to *United States v. Lopez* (9th Cir. May 21, 2021), the United States is moving for a two level variance pursuant to § 2D1.1(b)(18) as a result of the change in the safety valve eligibility criteria enacted as part of the First Step Act. In addition, the Defendant qualifies for a two-level reduction for minor role. The parties also agreed to recommend a three-level downward adjustment for acceptance of responsibility under USSG § 3E1.1(b), and a four-level downward departure under USSG § 5K2.0 for the Defendant's speedy resolution of the case and complete appellate waiver. The adjusted offense level is 22 and, as indicated in the presentence report, Defendant has 7 criminal history points, placing him in Criminal History Category IV, resulting in a Guideline range of 63 to 78 months.

For the reasons set forth below, the United States recommends the Court vary below the Guidelines Range and sentence Defendant to 60 months in custody, followed by a three-year term of supervised release.

#### B. The Sentencing Factors

Section 3553 states that the Court should consider the nature and circumstances of the offense and the characteristics of the defendant. In addition, it states that the Court

must consider other factors, including the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A) & (B). The sentence should also protect the public from further crimes of the defendant, and provide the defendant with needed correctional treatment. 18 U.S.C. § 3553(a)(2)(C) & (D). The Court shall also consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6). Upon applying these sentencing factors to this case, a sentence of incarceration of 60 months is appropriate and not greater than necessary to comply with the goals outlined in 18 U.S.C. § 3553, et seq.

### 1. *The nature and circumstances of the offense, the need for just punishment and to reflect the seriousness of the offense.*

The Defendant's conduct should not be taken lightly. Drug trafficking is a serious crime. Methamphetamine is a highly addictive controlled substance that has a proven record of destroying families, homes, and communities. Looking at the broad threat posed by the distribution of methamphetamine, the DEA estimates that while domestic production of this drug has significantly curbed, the majority of methamphetamine is trafficked into the United States by trans-national drug trafficking organizations based in Mexico. A byproduct of this trend has seen cheaper, more potent, product on the market.

In this case, Defendant served a methamphetamine subdistributor who obtained methamphetamine for distribution to his own customers from his co-defendants, CARRILLO and VILLEGAS.

### 2. *The need for deterrence and to promote respect for the law.*

Deterrence and respect for the law are important in this case for two reasons. First, helping to traffic methamphetamine— no matter the amount — is a serious offense, for which there must be a consequence. The law does not tolerate those who perpetuate the trafficking of drugs in our communities. Second, while it is unlikely that Defendant will reoffend, the deterrence at issue here is general deterrence to others in the community, who

may be tempted by easy money and a better lifestyle for relatively little work as a drug trafficker.

### 3. *The history and characteristics of the defendant.*

The Court must also consider the history and characteristics of the Defendant, which appear to suggest multiple mitigating factors, including the Defendant's prior honorable military service, positive employment history, family support, fraeducational background, and physical condition. In addition, the Defendant has a difficult history of substance abuse and addiction issues, which deserve attention from the Court as well. Therefore, the United States agrees with the Probation Officer that the Court should vary below the Guidelines Range based on these factors.

### IV.

### CONCLUSION

For the reasons stated above, the United States respectfully requests that this Court sentence the Defendant to sixty months in custody to be followed by three years of supervised release. In light of the nature and circumstances of the offenses, the recommended sentence is appropriate. Such a sentence would account for the nature of the Defendant's crimes and deter the Defendant and other drug traffickers, who seem to treat jail as a business risk, from distributing methamphetamine and other controlled substances in our community. Accordingly, the United States respectfully requests that the Court impose a sentence of sixty months in custody.

DATED: October 21, 2021                          Respectfully submitted,

                                                 RANDY S. GROSSMAN
                                                 Acting United States Attorney


                                                 /s/ Matthew J. Sutton
                                                 MATTHEW J. SUTTON
                                                 Assistant United States Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 21-cr-01559-H |
| v. | **CERTIFICATE OF SERVICE** |
| STEPHEN MYRICK (26), | |
| Defendant. | |

  I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and am not a party to the above-entitled action; that I served the following document: United States' Sentencing Memorandum, in the following manner: by electronically filing with the U.S. District Court for the Southern District of California using its ECF System.

DATED: October 21, 2021        /s/ Matthew J. Sutton
                MATTHEW J. SUTTON