Anton Vialtsin – 290333
185 West F Street, Suite 100-D
San Diego, California 92101
Telephone: (619) 357-6677
Facsimile:  (619) 234-5322
antonvialtsin@gmail.com

*Attorney for Francisco Carrillo*

## United States District Court

## Southern District of California

HON. MARILYN L. HUFF

| | |
|---|---|
| UNITED STATES OF AMERICA, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| Plaintiff, | |
| vs. | |
| FRANCISCO CARRILLO (25), | Case No.  3:21-cr-01559-H |
| Defendant. | Date: January 10, 2022 |
| | Time: 9 a.m. |

   After a childhood filled with sadness and struggle, it is no surprise that Frank Carrillo has spent his entire adult life battling addiction. Frank was raised by a single mother in impoverished neighborhoods of San Diego County. *PSR at ¶* 132. Despite working tirelessly, Frank's mother could not provide even the basic necessities for her children. Their utilities were regularly shut off because she could not afford to pay the bills. *PSR at ¶ 133.* There was often no food in the house, and Frank would go to his grandparents for a meal. As a six-year-old child, Frank was entrusted to his teenage male cousin for babysitting while his mother was at work. Sadly, Frank was sexually molested daily by this cousin. Frank eventually ran

away from home in his early adolescence and lived on the streets. When Frank was only thirteen, he turned to drugs to escape the world around him. As he grew older, Frank's addiction continued to cause problems in his relationships with family members. Finally, after decades of drug abuse and despair, Frank finds himself before this Court after pleading guilty to conspiracy to distribute methamphetamine stemming from one transaction of roughly two kilograms, a relatively small amount of drugs in this district. Frank has been in custody for over seven months since his arrest, a time he spent completing every available program at the jail facility. He completed programs related to anger management, drug abuse, and planning his future. And now, Frank asks this Court to impose a sentence of 41 months, a sentence sufficient to exact punishment for his misdeeds and yet one that also accounts for his difficult past.

## I.   A Sentence of 41 Months Adequately Punishes Francisco Carrillo and Provides an Opportunity for Rehabilitation.

Frank "endured poverty, sexual abuse, as well as familial and residential instability" throughout much of his life. *PSR at* ¶ 188. When Frank was just three years old, his parents divorced, and he was left to live with his mother, Phyllis. Despite being a functioning alcoholic, Phyllis tried her best to provide for her children. However, Phyllis could barely feed Frank and his sister. The family typically resided in very poor neighborhoods fraught with drugs, gangs, and violence. *PSR at* ¶ 132. The utilities in their small section 8 studio apartment were often shut off because Phyllis could not afford the bills. *PSR at* ¶ 133. When the kids became too hungry, and Phyllis too overwhelmed and desperate, they would eat at their grandparents' home. *Id.*

While Phyllis spent entire days at multiple jobs, Frank's teenage male cousin watched him and his sister. Sadly, both children were sexually molested by their cousin. Despite the feeling of heartache, Frank mustered the courage to share the

abuse with the probation officer. He explained to the officer that the abuse occurred daily and involved "inappropriate touching, groping, kissing, and much worse things." *PSR at* ¶ 134. Frank eventually told his mother about the abuse. She made the cousin leave the house, but Frank never received mental or emotional therapy. As a teenager, Frank was later diagnosed with anxiety with agoraphobia, attention deficit hyperactivity disorder, and bipolar disorder. *PSR at* ¶ 145.

During his teenage years, Frank split the time between his mother's and father's homes. As a result, he resided in six states and attended seventeen different schools during his formative years. *PSR at* ¶ 135. Frank believes that "this instability led to his insecurities as he had no long-term friends, he was always the new kid, and felt like a loner." *Id.* When he was just fifteen, Frank left his father's residence in San Diego and hitchhiked to San Francisco. *PSR at* ¶ 137. He quickly found himself homeless and "hustling" for food and money. *Id.* It was also the time Frank began to experiment with drugs and alcohol. While he tried marijuana and methamphetamine for the first time at thirteen years old, his drug use became a daily occurrence when he began to live alone. *PSR at* ¶¶ 150-152. By his twenties, Frank's addiction was out of control, and he remained a daily user of methamphetamine for over two decades. No matter the promises to himself and his partners, Frank could not kick his habit. Even this offense Frank committed, "in part, for cheap or free drugs to perpetuate his addiction, and he was likely under the influence during much of his involvement in this criminal activity and not thinking clearly." *PSR at* ¶ 153.

As this Court is well aware, Frank was in and out of custody for much of the last three decades, short jail stints often followed by probation violations. The longest time he was ever spent in custody was sixteen months under the California 50/50 good-time credit system. Many of his convictions were related to his drug usage. To be sure, this is not to undersell the seriousness of his actions or to avoid accountability. It merely reflects what is obvious from even a cursory glance:

Defendant's Sentencing Memorandum

3

Frank's criminal history tells the tale of an addict whose life is beholden more to the laws of addiction than the laws of the country. The forced sobriety of custody only delayed the inevitable. Once released, he tried to stay clean but couldn't. In 2006, however, Frank successfully completed the House of Metamorphosis inpatient drug treatment program. *PSR at* ¶ 154. Frank told the probation officer that we wished to participate in RDAP as he acknowledged that his substance abuse remained a problem and caused issues with his family and personal relationships. *PSR at* ¶¶ 153 &155. It is against this backdrop — one of heartbreak and addiction resulting in frequent incarceration — that this Court must consider what sentence to impose.

The facts of this case are pretty straightforward. Frank pleaded guilty to conspiracy to distribute drugs after he was tied to only one methamphetamine transaction. *PSR at* ¶ 145. For the past three years, Frank was homeless. He worked part-time with general contractor Scott Sutter. *PSR at* ¶ 163. When the pandemic began, the remodeling projects seized to exist, and Frank struggled financially. He lived in a tent on the sidewalk until the city workers cleared the area. Frank was initially provided a free motel on the city's dime for a month. After one month, however, Frank was out of the motel because the city no longer covered it, and he could not afford it. Frank and his fiancée went back to their old tent city, but it was cleared and blocked off.

Frank tried to find a way to pay for the motel. He was not successful at finding work, but he met an old acquaintances, who offered Frank to resell methamphetamine to make a few extra dollars. Frank used methamphetamine daily and knew many other homeless in the area who did as well. Frank began to resell small quantities primarily to his friends. It is clear that Frank's crime was fueled by his addiction. As previously noted, Frank committed the instant offense for cheap or free drugs to perpetuate his addiction. *PSR at* ¶ 153. He was also under the influence himself during much of his involvement in this criminal activity. *Id.*

Defendant's Sentencing Memorandum

As the probation officer noted, Frank "presented as intelligent and motivated to improve his life." *PSR at* ¶ 189. He accepted responsibility and stated, "he [was] sorry, he [felt] horrible, and regret[ed] his commission of the instant offense. He expressed an understanding of the seriousness of this offense and the negative effect his actions have had on the community and his family." *PSR at* ¶ 187. A forty-one months sentence would account for Frank's unique history and recognize that his culpability was affected by his history. It also recognizes that the sentencing guidelines do not always lead to just results, especially where trauma and addiction have contributed to the crime. Any custodial sentence will also be the first time Frank will receive any meaningful drug treatment and mental health rehabilitation. Indeed, the RDAP in the Bureau of Prisons will provide Frank with a structured program he desperately needs. It will also leave Frank with the tools to deal with the stresses of everyday life after he is released from custody.

Frank accepts responsibility for his actions but asks this Court to consider more than a guideline range driven by a quantity of drugs and a history of drug addiction. Considering the factors enumerated in § 3553(a), Frank asks this Court to impose a sentence of 41 months, which is "sufficient, but not greater than necessary" in this case.

Dated: January 3, 2022.

Respectfully submitted:

*/s/ Anton Vialtsin*
Attorney for *Francisco Carrillo*

Defendant's Sentencing Memorandum

5